**EXHIBIT 1**

# Exhibit 1

# RETAIL LEASE ORDER

DATE 01/20/2020

| CUSTOMER | CO-CUSTOMER | DOB |
|---|---|---|
| PATRICIA ECCLESTON | N/A | N/A |

| ADDRESS | | | | | |
|---|---|---|---|---|---|
| | | | N/A | | |
| | STATE FL | ZIP 32137 | CITY N/A | STATE N/A | ZIP N/A |
| E-MAIL | | | N/A | E-MAIL | |
| | | COUNTY FLAGLER | HOME PHONE N/A | WORK PHONE N/A | COUNTY N/A |

| STOCK NO K1317 | YEAR 2020 | NEW XX | USED | DEMO | EXECUTIVE | MILEAGE 13 | COLOR GREY | SALESPERSON 1 GAIL E. GILE |
|---|---|---|---|---|---|---|---|---|
| VIN KNDJ23AU6L7106787 | | | | | MAKE KIA | MODEL SOUL | BODY 5-SOUL | SALESPERSON 2 DEVIN AUSTIN COLLINS |

## NEW / DEMO AND EXECUTIVE VEHICLE DISCLOSURE

The new, demonstrator or executive Vehicle is leased AS-IS and WITH ALL FAULTS. Dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability or fitness for a particular purpose and neither assumes nor authorizes any other person to assume for it any liability in connection with the lease of the Vehicle. The only warranties applying to this Vehicle are those offered by the Manufacturer. The Manufacturer's warranty is not affected by Dealer's disclaimer of warranties. The Customer hereby acknowledges that Dealer has made available "warranty Pre-Sale Information" as disclosed in the Warranty Binders pursuant to the Magnuson-Moss Warranty Act.

Customer: _Patricia Eccleston_  Customer: N/A

THIS VEHICLE WAS DELIVERED TO A PREVIOUS PURCHASER.

Customer: _Patricia Eccleston_  Customer: N/A

## USED VEHICLE DISCLOSURE

This used Vehicle has been previously driven by others and Dealer has not made any representation regarding the Vehicle's history. Customer acknowledges that no representation has been made by any agent of Dealer: (i) regarding the history, condition, prior repair or maintenance, safety system or suitability of the Vehicle; or (ii) that it has or has not ever sustained damages prior to this Order, nor does dealer have the obligation to make any such disclosure. Customer understands that s/he may retain a third-party to provide information regarding the Vehicle's history and that Dealer encourages Customer to do so. Customer may also make arrangements to have the Vehicle inspected by a person of Customer's own choosing. Customer further acknowledges that Customer has test driven this Vehicle and it meets Customer's satisfaction or Customer has been offered an opportunity to do so, and has declined. Except as otherwise set forth on the window form (Buyer's Guide), this Vehicle is leased "AS IS and WITH ALL FAULTS," without any warranty and Dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and neither assumes nor authorizes any person to assume for it any liability in connection with the sale of the Vehicle. The manufacturer warranty, if any, has been fully explained. If the Vehicle is designated as a certified vehicle, that indicates that it has qualified for a limited extension of the Manufacturer's original warranty as set forth on the Buyer's Guide. The certified designation does not alter or modify any of the above disclaimers and waivers, nor does it create a Dealer warranty. It also does not mean that the Vehicle, like all used vehicles, will not suffer mechanical breakdowns, nor need maintenance due to wear and tear.

The Vehicle was previously a _N/A_ (enter short-term rental, taxicab, police vehicle, manufacturer buy-back, rebuilt, glider kit, replica or flood vehicle).

Customer: N/A  Customer: N/A

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

## LEASE FINANCING / CREDIT APPROVAL

This is an Order to lease a vehicle. This is not the Lease Agreement. The lease terms will be contained in a Lease Agreement which Customer will be required to execute. The lease financing terms will be a function of, among other things, Customer's credit and market forces. The Lease Agreement may also contain bank / acquisition fees, ancillary products, disposition fees and may require money paid at lease inception and/or a payment to reduce the capitalized cost which may vary from the amounts shown herein. Customer may arrange for lease financing through Dealer or a financing entity of Customer's choosing and Customer may be able to obtain more favorable lease financing from third parties. The Lease Agreement to be entered between Dealer and Customer, unless otherwise indicated in writing by

### LEASE INFORMATION

| | |
|---|---|
| Cash Price of Vehicle | 21143.57 |
| Extended Service Plan | N/A |
| Accessories /Options | |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| SUBTOTAL CAPITALIZED COST | 21143.57 |
| Predelivery Service Charge** | 998.00 |
| Electronic Registration Filing Fee** | 299.00 |
| ** These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale. | |
| Florida New Tire Fee & Lead Acid Battery Fee | 6.50 |
| N/A | N/A |
| Sales Tax 00 % | 331.53 |
| Rental Surcharge | 60.00 |
| County Tax | 50.00 |
| Lemon Law – Warranty Enforcement Act (New Cars Only) | N/A |
| Florida Title, Registration and License Fees (New ___ Trans XX) ☐ If box is checked this is an estimate | 100.60 |
| ACQ FEE/ADV PMT | 809.75 |
| Trade Pay-off / Balance on Prior Lease | N/A |
| Pre-owned Allowance &/or Discount | N/A |
| **TOTAL CAPITALIZED COST** | **23798.95** |
| Net Trade Equity Applied Towards Lease inception costs and/or capitalized cost reduction | 2500.00 |
| Additional Amounts Paid Towards Lease inception costs and/or capitalized cost reduction | 4507.38 |
| Rebates | 1660.00 |

### TRADE-IN 1

☐ Private Trade  ☐ Lease Walk Away

| Year 2007 | Make TOYOTA | Model COROLLA | Color GREEN |
|---|---|---|---|
| VIN 2T1BR32E87C794609 | | Mileage 126230 | |
| 1st Lien to PAID OFF | Amount N/A | | Good Thru N/A |
| 2nd Lien to N/A | Amount N/A | | Good Thru N/A |

Authorized by: _____

### TRADE-IN 2

☐ Private Trade  ☐ Lease Walk Away

| | |
|---|---|
| Additional Amounts Paid Towards Lease inception costs and/or capitalized cost reduction | 4507.38 |
| Rebates | 1660.00 |

Customer: N/A   Customer: N/A

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

### LEASE FINANCING / CREDIT APPROVAL

This is an Order to lease a vehicle. This is not the Lease Agreement. The lease terms will be contained in a Lease Agreement which Customer will be required to execute. The lease financing terms will be a function of, among other things, Customer's credit and market forces. The Lease Agreement may also contain bank / acquisition fees, ancillary products, disposition fees and may require money paid at lease inception and/or a payment to reduce the capitalized cost which may vary from the amounts shown herein. Customer may arrange for lease financing through Dealer or a financing entity of Customer's choosing and Customer may be able to obtain more favorable lease financing from third parties. The Lease Agreement to be entered between Dealer and Customer, unless otherwise indicated in writing by Dealer, shall be immediately assigned by Dealer to a bank / finance company (at face value or greater) which shall then be the creditor to whom Customer shall be obligated under the Lease Agreement. Customer also understands that: (i) the monthly lease payment pursuant to the lease agreement for the lease of an automobile may be negotiated with Dealer, and (ii) Dealer may receive some compensation for providing the lease financing and selling other products and services. Should Customer fail to execute a Lease Agreement, this Order shall be deemed terminated by Dealer without further notice. Similarly, Dealer may terminate this Order if Dealer cannot obtain credit approval for Customer or if Dealer is unable to sell Customer's Lease to a financial institution at face value or greater (these acts shall be collectively referred to as "Leasing Approvals"). Dealer's right of termination cannot be waived unless in writing. Leasing Approvals are not typically obtained at the time of the Vehicle's delivery and are beyond Dealer's control. Should Customer take delivery of the Vehicle prior to Dealer's obtaining the Leasing Approvals, Customer understands and acknowledges that pending the Leasing Approvals, delivery of the Vehicle to Customer serves as a convenience to Customer only and Customer does not have, nor will acquire, any rights or interests in the Vehicle by such delivery except Dealer's permission to use it, which permission can be revoked, requiring the Vehicle's immediate return to Dealer in the same condition as it existed when delivered to Customer. In the event of the return of the Vehicle, Customer agrees to pay Dealer the amount of any depreciation, repair costs and any damage to the Vehicle while it is in the possession of the Customer. Customer agrees that in no event shall the vehicle be physically removed more than one-hundred (100) miles from the County in which Dealer is located until the Leasing Approvals are obtained. Additionally, the obtaining of the Leasing Approvals are a condition precedent to the enforcement and validity of the Lease Agreement.

Customer: *Patricia Eggleston*   Customer: N/A

### TRADE-IN 1

☐ Private Trade   ☐ Lease Walk Away

Year 2007   Make TOYOTA   Model CORDLLA   Color GREEN
VIN 2T1BR32E87C794609   Mileage 126230
1st Lien to: PAID OFF   Amount N/A   Good Thru N/A
2nd Lien to N/A   Amount N/A   Good Thru N/A
Authorized by:

### TRADE-IN 2

☐ Private Trade   ☐ Lease Walk Away

Year N/A   Make N/A   Model N/A   Color N/A
VIN N/A   Mileage N/A
1st Lien to N/A   Amount N/A   Good Thru N/A
2nd Lien to N/A   Amount N/A   Good Thru N/A
Authorized by:

Unless specifically identified by Customer in writing and signed by the parties, Customer represents and warrants the following regarding the Trade-In: (i) it was not involved in an accident; (ii) having no knowledge of any body or major engine repair(s); and (iii) it was not previously a police vehicle, a taxicab, a short-term lease (for less than 12 months), also referred to as a rental vehicle, a flood damaged, frame damaged, salvaged or a rebuilt vehicle, and the title to the trade-in has not been branded as such. Subject to the terms and conditions of this Order, Customer authorizes Dealer to immediately sell the Trade-In whether or not the Leasing Approvals have been obtained. Customer agrees that in the event any inquiry reveals any undisclosed lien on the Trade-In, and/or the actual payoff for the disclosed lien on the Trade-In exceeds the Customer's statement of pay-off, Customer will cause such previously unknown lien(s) and/or the understated amount of the disclosed lien(s) to be satisfied within 72 hours of Dealer's notice to Customer in writing. If the vehicle(s) listed is a Lease Walk Away, Customer understands that Dealer's agreement to take possession of it is for convenience only and Dealer assumes no responsibility for its condition or any other obligation of Customer with respect to that lease such as remaining payments, excess miles or damage to vehicle, unless otherwise indicated in writing and signed by Dealer.

Customer: *Patricia Eggleston*
Customer: N/A

---

DO NOT SIGN BELOW UNTIL YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND CONDITIONS CONTAINED ON THE FRONT AND REVERSE OF THIS ORDER. BY SIGNING BELOW, YOU ACKNOWLEDGE THAT EXCEPT AS OTHERWISE PROVIDED IN WRITING, THIS REPRESENTS THE ENTIRE AGREEMENT AND THAT YOU HAVE NOT RELIED ON ANY ORAL REPRESENTATION, PROMISE OR AGREEMENT NOT CONTAINED WITHIN THIS WRITTEN CONTRACT. THIS ORDER IS NOT BINDING UNTIL EXECUTED BY DEALER'S MANAGER. CUSTOMER REPRESENTS AND WARRANTS THAT ALL INFORMATION PROVIDED TO DEALER IN CONNECTION WITH THIS TRANSACTION IS COMPLETE AND ACCURATE. CUSTOMER HAS READ, UNDERSTANDS AND ACCEPTS ALL PROVISIONS OF THIS ORDER AND THE WARRANTY STATEMENT.

---

**DEALER'S RIGHT TO CANCEL** - If Customer and Co-Customer sign here, the provisions of the Dealer's Right to Cancel section on the back, which gives the Dealer the right to cancel if Dealer is unable to assign a Lease Agreement signed with this Order within ____N/A____ days, will apply. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Dealer a charge of $ ____N/A____ per day from the date of cancellation until the vehicle is returned or repossessed.

X __N/A_____   X __N/A_____
Customer Signs                        Co-Customer Signs

---

Section 501.98, Florida Statutes, requires that, at least 30 days before bringing any claim against a motor vehicle dealer for an unfair or deceptive trade practice, a consumer must provide the dealer with a written demand letter stating the name, address, and telephone number of the consumer; the name and address of the dealer; a description of the facts that serve as the basis for the claim; the amount of damages; and copies of any documents in the possession of the consumer which relate to the claim. Such notice must be delivered by the United States Postal Service or by a nationally recognized carrier, return receipt requested, to the address where the subject vehicle was purchased or leased or where the subject transaction occurred, or an address at which the dealer regularly conducts business.

X *Patricia Eggleston*                    X N/A
Customer's Signature                     Co-Customer's Signature

This Order and Agreement represents the final agreement between the parties related to the sale and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.

X *Patricia Eggleston*                    X N/A
Customer's Signature                     Co-Customer's Signature

You have read each page of this Order and Agreement, including the arbitration provision on the reverse side, and agree to its terms. You have received a completely filled in copy of this Order.

Customer Signs: X *Patricia Eggleston*   Co-Customer Signs: X N/A

Accepted by Dealer: X *Daytona Kia*      By: _____

LAW FORM NO. FADA-LOVIARB (REV. 4/15)
© 2015 The Reynolds and Reynolds Company   TO ORDER: www.reysource.com; 1-800-344-0996; fax 1-800-531-9055

THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

## TERMS AND CONDITIONS

A. Definitions: As used in this Order the terms: (a) "Customer" shall mean the party(ies) acquiring the Vehicle; (b) "Vehicle" shall mean the vehicle which is the subject of this Order; (c) "Manufacturer" shall mean the manufacturer that manufactured the Vehicle; (d) "Trade-In" shall mean the automobile(s), but not a Lease Walk Away, conveyed by Customer to Dealer and described on the front side of this Order, which is being applied towards the acquisition costs of the Vehicle; (e) "ACV" shall mean the actual cash value of the Trade-In, as determined by the National Auto Research Black Book Official Used Car Market Guide based on its condition, current as of the date of Customer's delivery of the Trade-In to Dealer, or if the Trade-In is too old to be in such guide, the average auction price at the time of this Order at the Central Florida Automobile Auctions (open only to licensed automobile dealerships) of automobiles of similar equipment, condition model and year as the Trade-In; (f) "Pre-owned Allowance &/or Discount" as identified on the front side of this Order is the sum of the ACV plus any discount and/or credit given by Dealer towards the price of the Vehicle; (g) "Demonstrator" (as defined by Chapter 320, Florida Statutes), commonly referred to as "Demo" will be considered a new Vehicle; and (h) "executive vehicle" refers to a vehicle used exclusively by Manufacturer, its subsidiary, or a dealer for the commercial or personal use of the manufacturer's, subsidiary's, or dealer's employees and is considered a new Vehicle; and (i) "Lease Agreement" means an agreement by which the Vehicle is provided on a rental payment basis, subject to agreed upon terms and conditions. Terms in general will be interpreted based on Florida statutory definitions, if any.

B. Vehicle: Customer must accept and take delivery of Vehicle within 48 hours from its availability. Failure by Customer to do so shall constitute a material breach of this Order. By taking possession of Vehicle, Customer, unless otherwise confirmed in writing by Dealer, acknowledges that Vehicle has no defects, flaws or irregularities that would be detected during a visual examination and that no equipment or option is missing. Dealer shall not be liable for failing to deliver or for any delay in delivery where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer. Manufacturer has reserved the right to change the design of any new motor vehicle, chassis and any accessories or parts thereof at any time without notice and without obligation to make the same or any similar change upon any motor vehicle, chassis, accessories or parts thereof previously purchased by or shipped to Dealer or being manufactured or sold in accordance with Dealer's contracts. In the event of any such change by Manufacturer, Dealer shall have no obligation to Customer to make the same or any similar change in any motor vehicle, chassis, accessories or parts thereof covered by this Order either before or subsequent to delivery thereof to Customer. Dealer shall have no duty to disclose intended design changes by Manufacturer. Line item(s) of optional Dealer installed accessories, equipment listed on front side of this Order, service contracts or extended service policy shall not be construed as having been produced, supplied, issued by or installed by Manufacturer. With respect to a new Vehicle, all equipment and options existing at the time the Vehicle was shipped by the Manufacturer were produced by the Manufacturer and/or its world wide suppliers. Items installed thereafter may not be products of the Manufacturer. Neither the Manufacturer, nor Dealer warrant these items. Dealer does not warrant or guarantee the mileage indicated on the used Vehicle is accurate or that it may not have been altered by persons in possession prior to Dealer. Customer acknowledges that new vehicles may be delivered by the Manufacturer with some in-transit damage and acknowledges that sometimes new vehicles are damaged from being moved on or around the Dealer's property. Customer acknowledges that Customer may not be advised, except as required by Florida Statutes, if such damage occurs to a new Vehicle and is repaired.

C. Trade-In: Customer grants, bargains, conveys, sells, assigns and transfers to Dealer all of Customer's right, title and interest in the Trade-In. Customer fully warrants title to the Trade-In and that it is free and clear of all liens and encumbrances except as otherwise noted herein and will defend same against the claims of all persons whomsoever. Customer agrees to deliver to Dealer satisfactory evidence of title to any Trade-In at the time of its delivery to Dealer. If Customer fails to pay any undisclosed or understated liens, Customer shall be in material breach of this Order. In the event that the Trade-In has more mileage than represented by Customer or any of Customer's representations regarding the Trade-In are false, Customer shall be obligated to pay Dealer the difference between the ACV of the Trade-In as represented and the correct ACV within 10 days from written demand. Dealer may recover all consequential and incidental damages arising from Customer's breach of any warranty regarding the Trade-In. Dealer may reappraise the Trade-In if before its possession is delivered to Dealer, it is damaged or parts or accessories have been removed. If such reappraised value results in a "Pre-owned Allowance &/or Discount" that is lower than the allowance shown hereon, Customer may, if dissatisfied therewith, terminate this Order.

D. Rebates / Payment / Incentives: Dealer has no obligation to disclose to Customer the availability of any incentives or rebate. All incentives and rebates shown on the front side hereof are hereby assigned to Dealer. If Customer is receiving a discount or credit based on a specific relationship with the Manufacturer, Customer must furnish all necessary documentation, information, verification and certificates within 30 days. In the event that Customer fails to timely do so or in the event any moneys to be paid at inception are not paid or non-negotiable (i.e., NSF), Customer shall be in breach of this Order.

E. Mandatory Mediation: Before any party institutes an action, other than one that is expressly outside the scope of the arbitration provision, the parties must first mediate the dispute before a court certified mediator, which mediation shall be conducted in the county where the Dealer is situated. The parties shall jointly select the mediator and equally divide the cost of the mediation. The parties shall use good faith in selecting the mediator and participating in the mediation.

F. Miscellaneous: This Order shall survive the execution of the Lease Agreement. To the extent any terms herein conflict with the terms of the Lease Agreement (except as to dollar amounts), this Order shall control and govern. Waste tire fees and lead-acid battery fees, if applicable and if included in the price of Vehicle, are payable to the State of Florida, Department of Revenue. Dealer is not the agent of the Manufacturer. This Order cancels and supersedes any prior contract and comprises the complete and exclusive statement of the terms of the Order relating to the subject matters covered hereby, and constitutes the entire Order between the parties. There are no representations or contracts between the parties except as set forth herein or contemporaneously executed. This Order may not be changed, modified or extended except by an instrument in writing and signed by the parties. In the event this Order or any other contract or document executed by Customer contains a clerical or computation error or if additional documentation is necessary in order to effectuate the parties' intent, Customer agrees to cooperate with the execution of such (corrected) documentation and produce the additional documentation. Should Customer unreasonably refuse to give such cooperation, Customer shall be in material breach of this Order. By execution of this Order, Customer certifies being 18 years old or older. Customer has read, understands and accepts all provisions of this Order and the Warranty Statement. The parties enter into this Order freely and voluntarily in the absence of any duress or coercion. Customer agrees to pay, unless prohibited by law, any and all taxes applicable to this transaction, regardless of which party may have the primary tax liability therefor. The Florida Title, Registration and License fees are the result of a highly complicated formula. As a result, the amounts charged may only be estimates. If the amount of taxes and government fees identified on the front side hereof is less than the correct amount, Customer shall be obligated to Dealer for such difference. If the amount charged exceeds the correct amount, Dealer shall refund to Customer the difference. Dealer's obligations and rights hereunder may be assigned as this Order shall inure to the benefit of Dealer, its successors and/or assigns. All paragraph headings set forth in this Order are intended for convenience only and shall not control or affect the meaning or construction of the provisions hereof. All remedies afforded in this Order shall be taken and construed as cumulative, that is, in addition to every other remedy provided therein or by law. The failure of Dealer to enforce at any time any of the provisions of this Order, or to exercise any option herein provided, or to require at any time performance by Customer of any of the provisions hereof, shall in no way be construed to be a waiver or create an estoppel from enforcement of such provisions, nor in any way to affect the validity of this Order or any part thereof, or the right of Dealer to thereafter enforce each and every such provision, or to seek relief as a result of the prior breach. This Order is an essential document to any claim by Customer against Dealer in connection with the leasing of the Vehicle.

G. Termination: In the event this Order is terminated by either Dealer or Customer as permitted by this Order, including, but not limited to the failure to obtain Lease Approvals: (a) Dealer will be entitled to the immediate return of the Vehicle and Customer shall be obligated to return the Vehicle to Dealer within 24 hours of the date of termination; and (b) Customer shall be liable to Dealer for $1.00 per mile used over and above 25 miles per day average, plus any wear, tear or damage to the Vehicle and diminution in value. In the event that the Vehicle is not returned within this time period, such failure will constitute a material breach of this Order and Dealer shall have those remedies as described in paragraph "F" below. Otherwise, Customer will be entitled to the return of their inception money subject to a lien in favor of Dealer for any amount due it hereunder. If a Trade-In was applied towards the Vehicle's acquisition, it shall be returned to Customer upon payment of a reasonable charge for storage, lien payoffs and repairs (if any) or, if it has been already sold by Dealer, Customer shall be entitled to the "Net Trade-in Proceeds", calculated as follows: the ACV, less the sum of (i) liens, (ii) costs incurred by Dealer to repair and/or ready it for sale, and (iii) a selling commission equal to 15% of the ACV. If the Net Trade-In Proceeds is negative, then Customer shall be obligated to Dealer for that amount.

**Dealer's Right to Cancel**

a. Dealer agrees to deliver the Vehicle to you on the date the Lease Agreement is signed by Dealer and you. You understand that it may take a few days for Dealer to verify your credit, locate financing for you on the exact terms shown on the front of the Lease Agreement, and assign the Lease Agreement to a financial institution. You agree that Dealer has the number of days stated on the front of the Order to assign the Lease Agreement. You agree that if Dealer is unable to assign the Lease Agreement within this time

transfers to Dealer all of Customer's right, title and interest in the Trade-In, [illegible] to [illegible] free and clear of all liens and encumbrances except as otherwise noted herein and will defend same against the claims of all persons whomsoever. Customer agrees to deliver to Dealer satisfactory evidence of title to any Trade-In at the time of its delivery to Dealer. If Customer fails to pay any undisclosed or understated liens, Customer shall be in material breach of this Order. In the event that the Trade-In has more mileage than represented by Customer or any of Customer's representations regarding the Trade-In are false, Customer shall be obligated to pay Dealer the difference between the ACV of the Trade-In as represented and the correct ACV within 10 days from written demand. Dealer may recover all consequential and incidental damages arising from Customer's breach of any warranty regarding the Trade-In. Dealer may reappraise the Trade-In if before its possession is delivered to Dealer, it is damaged or parts or accessories have been removed. If such reappraised value results in a "Pre-owned Allowance &/or Discount" that is lower than the allowance shown hereon, Customer may, if dissatisfied therewith, terminate this Order.

failure to obtain Lease Approvals, (a) Dealer will be entitled to the return of the Vehicle to Dealer within 24 hours of notice of termination, and (b) Customer shall be liable to Dealer for $1.00 per mile used over and above 25 miles per day average, plus any wear, tear or damage to the Vehicle and diminution in value. In the event that the Vehicle is not returned within this time period, such failure will constitute a material breach of this Order and Dealer shall have those remedies as described in paragraph "F" below. Otherwise, Customer will be entitled to the return of their inception money subject to a lien in favor of Dealer for any amount due if hereunder. If a Trade-In was applied towards the Vehicle's acquisition, it shall be returned to Customer upon payment of a reasonable charge for storage, lien payoffs and repairs (if any) or, if it has been already sold by Dealer, Customer shall be entitled to the "Net Trade-In Proceeds" calculated as follows: the ACV, less the sum of (i) liens, (ii) costs incurred by Dealer to repair and/or ready it for sale, and (iii) a selling commission equal to 15% of the ACV. If the Net Trade-In Proceeds is negative, then Customer shall be obligated to Dealer for that amount.

### Dealer's Right to Cancel

a. Dealer agrees to deliver the Vehicle to you on the date the Lease Agreement is signed by Dealer and you. You understand that it may take a few days for Dealer to verify your credit, locate financing for you on the exact terms shown on the front of the Lease Agreement, and assign the Lease Agreement to a financial institution. You agree that Dealer has the number of days stated on the front of the Order to assign the Lease Agreement. You agree that if Dealer is unable to assign the Lease Agreement within this time period to any one of the financial institutions with whom Dealer regularly does business under an assignment acceptable to Dealer, Dealer may cancel the Lease Agreement. Dealer's right to cancel the Lease Agreement ends upon assignment of the Lease Agreement Contract.

b. If Dealer elects to cancel per Paragraph a. above, Dealer will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new Lease Agreement with different financing terms (for example, a larger down payment, a higher rent charge, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

c. Upon receipt of the notice of cancellation, you must return the Vehicle to Dealer within 48 hours in the same condition as when leased other than reasonable wear for the time you had it. Except as described below, Dealer must give you back all consideration Dealer has received from you in connection with the Lease Agreement.

d. If you do not return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree that Dealer may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Dealer in taking the Vehicle from you, including reasonable attorney's fees. If you fail to return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Dealer the charge shown in the Dealer's Right to Cancel provision on the front of this Order as may be provided in the Lease Agreement for each day you do not return the Vehicle after receipt of the notice of cancellation.

e. While the Vehicle is in your possession, all terms of the Lease Agreement, including those relating to use of the Vehicle and insurance for the Vehicle, are in full force and you assume all risk of loss or damage to the Vehicle. You must pay all reasonable costs for repair of any damage done to the Vehicle while the Vehicle is in your possession. Dealer may deduct from any consideration due to you under paragraph c. above Dealer's reasonable costs to repair the Vehicle and any daily charges you incur if you fail to return the Vehicle within 48 hours after the receipt of the notice of cancellation. If Dealer cancels the Lease Agreement, the terms of this Dealer's Right to Cancel provision (including those on the front of this Order and as provided in the Lease Agreement) remain in effect even after you no longer have possession of the Vehicle.

### ARBITRATION PROVISION
#### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Order and Agreement was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this Order and Agreement. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

[illegible]