# EXHIBIT 2

# Exhibit 2

  **iLAW FADA-BOVIARB19**    28538

   **Daytona Kia**
510 N. NOVA ROAD · DAYTONA BEACH FLORIDA 32114
(386) 252-7500 · FAX (386) 236-1006
www.daytonakia.com

**VEHICLE BUYER'S ORDER**

Date: 04/01/2023

| Buyer Name and Address | Co-Buyer Name and Address | Seller Name and Address |
|---|---|---|
| PATRICIA A ECCLESTON | N/A | DAYTONA KIA<br>510 N NOVA RD<br>DAYTONA BEACH FL 32114 |
| County: FLAGLER<br>Email:<br>Phone:<br>Cell: | County: N/A<br>Email: N/A<br>Phone: N/A<br>Cell: N/A | Salesperson:<br>JEROME D KRAMER JR |

**Agreement to Purchase.** Buyer and Co-Buyer agree to buy the vehicle described below ("Vehicle") from Seller for the amount and on the terms in this Vehicle Buyer's Order ("Agreement"). "Buyer" and "you" refer to the above Buyer and Co-Buyer, separately and together. "Dealer," "we," "us," and "our" refer to the above Seller. In this Agreement, (e) means an estimate.

**Vehicle Description**

| Year: | Make: | Model: | Mileage: | Vehicle Identification Number: |
|---|---|---|---|---|
| 2020 | KIA | SOUL | 16092 | KNDJ23AU6L7106787 |
| New/Used/Demo/Executive: | Color: | Body: | Stock Number: | |
| NEW | GREY | | | |

**Insurance Information.** You have arranged the following insurance on the Vehicle:
Insurance Company THE STANDARD FIRE        Policy Number 9938194512031-01760

**Additional Sales Terms**

If the Vehicle is used, unless indicated below, we do not know and are not able to make any representations about the Vehicle's history.

The Vehicle has previously been titled, registered or used as a (check all that apply) ☐ taxicab ☐ police vehicle ☐ short-term lease vehicle.

The Vehicle is titled as (check all that apply) ☐ rebuilt or assembled from parts ☐ kit car ☐ glider kit ☐ replica ☐ flood vehicle ☐ nonconforming vehicle (manufacturer buy back) ☐ custom vehicle ☐ street rod vehicle.

You represent that you have thoroughly inspected the Vehicle. You approve and accept it. You had an opportunity to have the Vehicle inspected on Seller's premises (but not its service department) by a third party of your choice and at your expense. You are purchasing the Vehicle based on your inspection. You are not relying on any opinion, statement, or promise of the Seller or its employees that is not contained in the written agreements you are signing today.

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

**Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this Agreement, this Vehicle is sold "AS IS" and "WITH ALL FAULTS." The Seller makes no warranties, express or implied, on the Vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the Vehicle that the Vehicle Manufacturer may provide.

| | | |
|---|---|---|
| ☐ THIS VEHICLE WAS DELIVERED TO A PREVIOUS PURCHASER. | | |
| Buyer X N/A | | |
| Co-Buyer X N/A | | |
| **Itemization of Sale** | | |
| Vehicle Purchase Price | | 11225.89 |
| **Predelivery Service Fees** | | |
| Predelivery Service Charge** | | 998.00 |
| Electronic Registration Filing Fee** | | 399.00 |
| N/A | | N/A |
| **Additional Items** | | |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| **Taxes** | | |
| Sales Tax | 6.00% | 757.76 |
| County Tax | 1.00% | 50.00 |
| Other Tax (Describe) N/A | | N/A |
| **Official Fees** | | |
| Title, Registration and/or License Fees | | 82.85 |
| Lemon Law Fee (New Cars Only) | | N/A |
| Lead-acid Battery Fee | | 1.50 |
| New Tire Fee | | 5.00 |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| N/A | | N/A |
| **Total Cash Price** | | 13520.00 |
| Trade-in Allowance | | N/A |
| Trade-in Payoff Balance | | N/A |
| Net Trade-in (If negative, enter $0 here and enter amount on Trade-in Balance Owing line.) | | 0.00 |
| Cash Down Payment | | N/A |
| Deferred Down Payment | | N/A |
| Rebate (Describe) N/A | | N/A |
| Other Down Payment (Describe) | | |

## TERMS AND CONDITIONS

A. <u>Definitions</u>: As used in this Order the terms: (a) "Customer" shall mean the party(ies) acquiring the Vehicle; (b) "Vehicle" shall mean the vehicle which is the subject of this Order; (c) "Manufacturer" shall mean the manufacturer that manufactured the Vehicle; (d) "Trade-In" shall mean the automobile(s), but not a Lease Walk Away, conveyed by Customer to Dealer and described on the front side of this Order, which is being applied towards the acquisition costs of the Vehicle; (e) "ACV" shall mean the actual cash value of the Trade-In, as determined by the National Auto Research Black Book Official Used Car Market Guide based on its condition, current as of the date of Customer's delivery of the Trade-In to Dealer, or if the Trade-In is too old to be in such guide, the average auction price at the time of this Order at the Central Florida Automobile Auctions (open only to licensed automobile dealerships) of automobiles of similar equipment, condition model and year as the Trade-In; (f) "Pre-owned Allowance &/or Discount" as identified on the front side of this Order is the sum of the ACV plus any discount and/or credit given by Dealer towards the price of the Vehicle; (g) "Demonstrator" (as defined by Chapter 320, Florida Statutes), commonly referred to as "Demo" will be considered a new Vehicle; and (h) "executive vehicle" refers to a vehicle used exclusively by Manufacturer, its subsidiary, or a dealer for the commercial or personal use of the manufacturer's, subsidiary's, or dealer's employees and is considered a new Vehicle; and (i) "Lease Agreement" means an agreement by which the Vehicle is provided on a rental payment basis, subject to agreed upon terms and conditions. Terms in general will be interpreted based on Florida statutory definitions, if any.

B. <u>Vehicle</u>: Customer must accept and take delivery of Vehicle within 48 hours from its availability. Failure by Customer to do so shall constitute a material breach of this Order. By taking possession of Vehicle, Customer, unless otherwise confirmed in writing by Dealer, acknowledges that Vehicle has no defects, flaws or irregularities that would be detected during a visual examination and that no equipment or option is missing. Dealer shall not be liable for failing to deliver or for any delay in delivery where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer. Manufacturer has reserved the right to change the design of any new motor vehicle, chassis and any accessories or parts thereof at any time without notice and without obligation to make the same or any similar change upon any motor vehicle, chassis, accessories or parts thereof previously purchased by or shipped to Dealer or being manufactured or sold in accordance with Dealer's contracts. In the event of any such change by Manufacturer, Dealer shall have no obligation to Customer to make the same or any similar change in any motor vehicle, chassis, accessories or parts thereof covered by this Order either before or subsequent to delivery thereof to Customer. Dealer shall have no duty to disclose intended design changes by Manufacturer. Line item(s) of optional Dealer installed accessories, equipment listed on front side of this Order, service contracts or extended service policy shall not be construed as having been produced, supplied, issued by or installed by Manufacturer. With respect to a new Vehicle, all equipment and options existing at the time the Vehicle was shipped by the Manufacturer were produced by the Manufacturer and/or its world wide suppliers. Items installed thereafter may not be products of the Manufacturer. Neither the Manufacturer, nor Dealer warrant these items. Dealer does not warrant or guarantee the mileage indicated on the used Vehicle is accurate or that it may not have been altered by persons in possession prior to Dealer. Customer acknowledges that new vehicles may be delivered by the Manufacturer with some in-transit damage and acknowledges that sometimes new vehicles are damaged from being moved on or around the Dealer's property. Customer acknowledges that Customer may not be advised, except as required by Florida Statutes, if such damage occurs to a new Vehicle and is repaired.

C. <u>Trade-In</u>: Customer grants, bargains, conveys, sells, assigns and transfers to Dealer all of Customer's right, title and interest in the Trade-In. Customer fully warrants title to the Trade-In and that it is free and clear of all liens and encumbrances except as otherwise noted herein and will defend same against the claims of all persons whomsoever. Customer agrees to deliver to Dealer satisfactory evidence of title to any Trade-In at the time of its delivery to Dealer. If Customer fails to pay any undisclosed or understated liens, Customer shall be in material breach of this Order. In the event that the Trade-In has more mileage than represented by Customer or any of Customer's representations regarding the Trade-In are false, Customer shall be obligated to pay Dealer the difference between the ACV of the Trade-In as represented and the correct ACV within 10 days from written demand. Dealer may recover all consequential and incidental damages arising from Customer's breach of any warranty regarding the Trade-In. Dealer may reappraise the Trade-In if before its possession is delivered to Dealer, it is damaged or parts or accessories have been removed. If such reappraised value results in a "Pre-owned Allowance &/or Discount" that is lower than the allowance shown hereon, Customer may, if dissatisfied therewith, terminate this Order.

D. <u>Rebates / Payment / Incentives</u>: Dealer has no obligation to disclose to Customer the availability of any incentives or rebate. All incentives and rebates shown on the front side hereof are hereby assigned to Dealer. If Customer is receiving a discount or credit based on a specific relationship with the Manufacturer, Customer must furnish all necessary documentation, information, verification and certificates within 30 days. In the event that Customer fails to timely do so or in the event any moneys to be paid at inception are not paid or non-negotiable (i.e., NSF), Customer shall be in breach of this Order.

E. <u>Mandatory Mediation</u>: Before any party institutes an action, other than one that is expressly outside the scope of the arbitration provision, the parties must first mediate the dispute before a court certified mediator, which mediation shall be conducted in the county where the Dealer is situated. The parties shall jointly select the mediator and equally divide the cost of the mediation. The parties shall use good faith in selecting the mediator and participating in the mediation.

F. <u>Miscellaneous</u>: This Order shall survive the execution of the Lease Agreement. To the extent any terms herein conflict with the terms of the Lease Agreement (except as to dollar amounts), this Order shall control and govern. Waste tire fees and lead-acid battery fees, if applicable and if included in the price of Vehicle, are payable to the State of Florida, Department of Revenue. Dealer is not the agent of the Manufacturer. This Order cancels and supersedes any prior contract and comprises the complete and exclusive statement of the terms of the Order relating to the subject matters covered hereby, and constitutes the entire Order between the parties. There are no representations or contracts between the parties except as set forth herein or contemporaneously executed. This Order may not be changed, modified or extended except by an instrument in writing and signed by the parties. In the event this Order or any other contract or document executed by Customer contains a clerical or computation error or if additional documentation is necessary in order to effectuate the parties' intent, Customer agrees to cooperate with the execution of such (corrected) documentation and produce the additional documentation. Should Customer unreasonably refuse to give such cooperation, Customer shall be in material breach of this Order. By execution of this Order, Customer certifies being 18 years old or older. Customer has read, understands and accepts all provisions of this Order and the Warranty Statement. The parties enter into this Order freely and voluntarily in the absence of any duress or coercion. Customer agrees to pay, unless prohibited by law, any and all taxes applicable to this transaction, regardless of which party may have the primary tax liability therefor. The Florida Title, Registration and License fees are the result of a highly complicated formula. As a result, the amounts charged may only be estimates. If the amount of taxes and government fees identified on the front side hereof is less than the correct amount, Customer shall be obligated to Dealer for such difference. If the amount charged exceeds the correct amount, Dealer shall refund to Customer the difference. Dealer's obligations and rights hereunder may be assigned as this Order shall inure to the benefit of Dealer, its successors and/or assigns. All paragraph headings set forth in this Order are intended for convenience only and shall not control or affect the meaning or construction of the provisions hereof. All remedies afforded in this Order shall be taken and construed as cumulative, that is, in addition to every other remedy provided therein or by law. The failure of Dealer to enforce at any time any of the provisions of this Order, or to exercise any option herein provided, or to require at any time performance by Customer of any of the provisions hereof, shall in no way be construed to be a waiver or create an estoppel from enforcement of such provisions, nor in any way to affect the validity of this Order or any part thereof, or the right of Dealer to thereafter enforce each and every such provision, or to seek relief as a result of the prior breach. This Order is an essential document to any claim by Customer against Dealer in connection with the leasing of the Vehicle.

G. <u>Termination</u>: In the event this Order is terminated by either Dealer or Customer as permitted by this Order, including, but not limited to the failure to obtain Lease Approvals: (a) Dealer will be entitled to the immediate return of the Vehicle and Customer shall be obligated to return the Vehicle to Dealer within 24 hours of the date of termination; and (b) Customer shall be liable to Dealer for $1.00 per mile used over and above 25 miles per day average, plus any wear, tear or damage to the Vehicle and diminution in value. In the event that the Vehicle is not returned within this time period, such failure will constitute a material breach of this Order and Dealer shall have those remedies as described in paragraph "F" below. Otherwise, Customer will be entitled to the return of their inception money subject to a lien in favor of Dealer for any amount due it hereunder. If a Trade-In was applied towards the Vehicle's acquisition, it shall be returned to Customer upon payment of a reasonable charge for storage, lien payoffs and repairs (if any) or, if it has been already sold by Dealer, Customer shall be entitled to the "Net Trade-in Proceeds", calculated as follows: the ACV, less the sum of (i) liens, (ii) costs incurred by Dealer to repair and/or ready it for sale, and (iii) a selling commission equal to 15% of the ACV. If the Net Trade-In Proceeds is negative, then Customer shall be obligated to Dealer for that amount.

---

**Dealer's Right to Cancel**

a. Dealer agrees to deliver the Vehicle to you on the date the Lease Agreement is signed by Dealer and you. You understand that it may take a few days for Dealer to verify your credit, locate financing for you on the exact terms shown on the front of the Lease Agreement, and assign the Lease Agreement to a financial institution. You agree that Dealer has the number of days stated on the front of the Order to assign the Lease Agreement. You agree that if Dealer is unable to assign the Lease...

...vehículo forma parte del presente contrato. La información en el particular contenida deja sin efecto toda disposición en contrario contenida en el contrato de venta.

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this Agreement, this Vehicle is sold "AS IS" and "WITH ALL FAULTS." The Seller makes no warranties, express or implied, on the Vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the Vehicle that the Vehicle Manufacturer may provide.

We have provided to you written warranty information if any applies to the sale of the Vehicle. This includes any warranty indicated on the Used Car Buyers Guide if the Vehicle is used. By initialing below, you acknowledge that you received the warranty information.

Buyer's Initials _pe_  Co-Buyer's Initials _N/A_

| | |
|---|---|
| New Tire Fee | 5.00 |
| | N/A |
| | N/A |
| | N/A |
| | N/A |
| | N/A |
| Total Cash Price | 13520.00 |
| Trade-in Allowance | N/A |
| Trade-in Payoff Balance | N/A |
| Net Trade-in (If negative, enter $0 here and enter amount on Trade-in Balance Owing line.) | 0.00 |
| Cash Down Payment | N/A |
| Deferred Down Payment | N/A |
| Rebate (Describe) N/A | N/A |
| Other Down Payment (Describe) N/A | N/A |
| Total Down Payment | N/A |
| Trade-in Balance Owing (See Net Trade-in) | N/A |
| Balance Due on Delivery | 13520.00 |

**These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale. Predelivery service fees are paid to the dealer (not a governmental fee). Charging predelivery service fees do not add or change any warranties provided on the Vehicle.

As a condition of the Vehicle sale, we agree to perform the following services: _N/A_
You agree to schedule services by calling _N/A_ within _N/A_ days of this Agreement.

**Trade-in Vehicle 1**
Year _N/A_ Make _N/A_ Model _N/A_
VIN _N/A_ Mileage _N/A_
Trade-in Allowance $ _N/A_
Lienholder _N/A_
Payoff Amount _N/A_ Good Thru: _N/A_
Lienholder _N/A_
Payoff Amount _N/A_ Good Thru: _N/A_

**Trade-in Vehicle 2**
Year _N/A_ Make _N/A_ Model _N/A_
VIN _N/A_ Mileage _N/A_
Trade-in Allowance $ _N/A_
Lienholder _N/A_
Payoff Amount _N/A_ Good Thru: _N/A_
Lienholder _N/A_
Payoff Amount _N/A_ Good Thru: _N/A_

You assign to us all of your rights, title and interest in each Trade-In Vehicle. You represent that each Trade-In Vehicle was not previously used as a police vehicle, taxicab, or under a short-term lease. To the best of your knowledge, each vehicle you are trading in ☐ has ☐ has not been in any accident with damages exceeding $500.

Buyer Initials _N/A_   Co-Buyer Initials _N/A_

SELLER'S RIGHT TO CANCEL. If Buyer and Co-buyer sign here, the Seller's Right to Cancel section on the back applies. It gives us the right to cancel if we are unable to assign the Retail Installment Sale Contract within _N/A_ days of the date you and we sign it. If you fail to return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay us a charge of $ _N/A_ per day from the date of cancellation until the Vehicle is returned or repossessed.

X _N/A_
Buyer Signs

X _N/A_
Co-Buyer Signs

**Trade-In Vehicle Payoff Agreement.** We relied on information from you and/or the lienholder or lessor of each Trade-In Vehicle to arrive at the above trade-in payoff amount(s). You understand that each amount quoted is an estimate. We agree to pay the above payoff amount(s) to each Trade-In Vehicle lienholder, lessor, or its designee. If the actual payoff amount is more than the above amount, you must pay us the additional amount on demand. If the actual payoff amount is less than the above amount, we will refund to you any overpayment we receive from the lienholder, lessor, or its designee.

If you finance the Vehicle's purchase, you may do so through us or any finance source you choose. Another finance source could provide you terms more favorable than we do. If you purchase credit insurance, GAP or other third party product, we may receive a portion of the charges or other compensation from the product's provider.

**The Annual Percentage Rate in a Retail Installment Sale Contract may be negotiable with us. We may assign any Retail Installment Sale Contract to a finance source and retain its right to receive a part of the finance charge imposed on that contract.**

Section 501.98, Florida Statutes, requires that, at least 30 days before bringing any claim against a motor vehicle dealer for an unfair or deceptive trade practice, a consumer must provide the dealer with a written demand letter stating the name, address, and telephone number of the consumer; the name and address of the dealer; a description of the facts that serve as the basis for the claim; the amount of damages; and copies of any documents in the possession of the consumer which relate to the claim. Such notice must be delivered by the United States Postal Service or by a nationally recognized carrier, return receipt requested, to the address where the subject vehicle was purchased or leased or where the subject transaction occurred, or an address at which the dealer regularly conducts business.

X _Patricia Eggleston_
Buyer's Signature

X _N/A_
Co-Buyer's Signature

This Vehicle Buyer's Order is the complete agreement between you and us relating to the sale of the Vehicle. There are no other written or oral agreements. Any change to this Agreement must be in writing and signed by you and us.

Buyer Signs: X _Patricia Eggleston_   Co-Buyer Signs: X _N/A_

This Agreement is not binding on us until it is signed by our authorized representative.

This Agreement includes the terms and provisions on the front and back side. It includes the Arbitration Provision on the reverse side. By signing, you represent that you read and agree to all the terms of this Agreement, including the Arbitration Provision. You also represent that you received a completed copy of this Agreement.

Buyer Signs: X _Patricia Eggleston_   Co-Buyer Signs: X _N/A_

Seller: X _Daytona_ By: _____ Its: _____

iLAW FORM NO. FADA-BOVIARB19 (Rev. 10/19)
© 2019 The Reynolds and Reynolds Company   TO ORDER: www.reysource.com, 1-800-344-0996; fax 1-800-531-9055

THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

m. Customer fully warrants title to the Trade-In and that it is free and clear [of encumbrances] except [as] agreed [to in writing]. Customer [shall] defend same against the claims of all persons whomsoever. Customer agrees to deliver to Dealer satisfactory evidence of title to any Trade-In at the time of its delivery to Dealer. If Customer fails to pay any undisclosed or understated liens, Customer shall be in material breach of this Order. In the event that the Trade-In has more mileage than represented by Customer or any of Customer's representations regarding the Trade-In are false, Customer shall be obligated to pay Dealer the difference between the ACV of the Trade-In as represented and the correct ACV within 10 days from written demand. Dealer may recover all consequential and incidental damages arising from Customer's breach of any warranty regarding the Trade-In. Dealer may reappraise the Trade-In if before its possession is delivered to Dealer, it is damaged or parts or accessories have been removed. If such reappraised value results in a "Pre-owned Allowance &/or Discount" that is lower than the allowance shown hereon, Customer may, if dissatisfied therewith, terminate this Order.

immediate return of the vehicle and Customer shall be obligated to return [the vehicle to Dealer] ... Dealer [within 24 hours of such termination, and (b)] Customer shall be liable to Dealer for $1.00 per mile used over and above 25 miles per day average, plus any wear, tear or damage to the Vehicle and diminution in value. In the event that the Vehicle is not returned within this time period, such failure will constitute a material breach of this Order and Dealer shall have those remedies as described in paragraph "F" below. Otherwise, Customer will be entitled to the return of their inception money subject to a lien in favor of Dealer for any amount due it hereunder. If a Trade-In was applied towards the Vehicle's acquisition, it shall be returned to Customer upon payment of a reasonable charge for storage, lien payoffs and repairs (if any) or, if it has been already sold by Dealer, Customer shall be entitled to the "Net Trade-in Proceeds", calculated as follows: the ACV, less the sum of (i) liens, (ii) costs incurred by Dealer to repair and/or ready it for sale, and (iii) a selling commission equal to 15% of the ACV. If the Net Trade-In Proceeds is negative, then Customer shall be obligated to Dealer for that amount.

### Dealer's Right to Cancel

a. Dealer agrees to deliver the Vehicle to you on the date the Lease Agreement is signed by Dealer and you. You understand that it may take a few days for Dealer to verify your credit, locate financing for you on the exact terms shown on the front of the Lease Agreement, and assign the Lease Agreement to a financial institution. You agree that Dealer has the number of days stated on the front of the Order to assign the Lease Agreement. You agree that if Dealer is unable to assign the Lease Agreement within this time period to any one of the financial institutions with whom Dealer regularly does business under an assignment acceptable to Dealer, Dealer may cancel the Lease Agreement. Dealer's right to cancel the Lease Agreement ends upon assignment of the Lease Agreement Contract.

b. If Dealer elects to cancel per Paragraph a. above, Dealer will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new Lease Agreement with different financing terms (for example, a larger down payment, a higher rent charge, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

c. Upon receipt of the notice of cancellation, you must return the Vehicle to Dealer within 48 hours in the same condition as when leased other than reasonable wear for the time you had it. Except as described below, Dealer must give you back all consideration Dealer has received from you in connection with the Lease Agreement.

d. If you do not return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree that Dealer may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Dealer in taking the Vehicle from you, including reasonable attorney's fees. If you fail to return the Vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Dealer the charge shown in the Dealer's Right to Cancel provision on the front of this Order as may be provided in the Lease Agreement for each day you do not return the Vehicle after receipt of the notice of cancellation.

e. While the Vehicle is in your possession, all terms of the Lease Agreement, including those relating to use of the Vehicle and insurance for the Vehicle, are in full force and you assume all risk of loss or damage to the Vehicle. You must pay all reasonable costs for repair of any damage done to the Vehicle while the Vehicle is in your possession. Dealer may deduct from any consideration due to you under paragraph c. above Dealer's reasonable costs to repair the Vehicle and any daily charges you incur if you fail to return the Vehicle within 48 hours after the receipt of the notice of cancellation. If Dealer cancels the Lease Agreement, the terms of this Dealer's Right to Cancel provision (including those on the front of this Order and as provided in the Lease Agreement) remain in effect even after you no longer have possession of the Vehicle.

### ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this Order and Agreement or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Order and Agreement) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Order and Agreement was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this Order and Agreement. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

FADA-LOV/ARB (4/16)