**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

Case No.: 6:23-cv-1717-WWB-RMN

PATRICIA A. ECCLESTON,
An Individual,

      Plaintiff,

v.


INDICAR OF DAYTONA, INC.,
d/b/a DAYTONA KIA,
A Florida Corporation,

      Defendant.
_____/

**<u>DECLARATION OF ATTORNEY JOSHUA FEYGIN</u>**

**BEFORE ME**, personally appeared Attorney JOSHUA FEYGIN, who being

first dully sworn deposes and states as follows:

    1.    The undersigned represents Plaintiff, PATRICIA A. ECCLESTON

(hereinafter "Ms. Eccleston" or "Plaintiff"), in "*PATRICIA A. ECCLESTON, an*

*Individual, Plaintiff, v. INDICAR OF DAYTONA, INC., d/b/a DAYTONA KIA, A*

*Florida Corporation*," bearing case number 6:23-cv-1717-WWB-RMN, currently

pending in the Federal District Court for the Middle District of Florida ("Eccleston

Lawsuit").

2. Undersigned counsel is over the age of eighteen and make this declaration based upon personal knowledge and experience.

3. The Eccleston Lawsuit involves individual consumer protection claims advanced by Ms. Eccleston against Defendant, INDICAR OF DAYTONA, INC., d/b/a DAYTONA KIA, a Florida corporation, arising from a consumer motor vehicle lease transaction.

4. From 2016 through the present, the undersigned has practiced with a focus on representing consumers in consumer protection claims in state and federal court.

5. Much of said practice has been dedicated to advancing claims relative to consumer loan or lease transactions for motor vehicles.

6. Part and parcel to such representation, the undersigned has filed several dozen arbitration demands with the American Arbitration Association (hereinafter the "AAA") against a multitude of business throughout the State of Florida.

7. Through his practice, the undersigned has routinely observed the AAA dismissing proceedings initiated by consumers as a direct result of the respective respondents' failure to comply with one or more arbitration rules of the AAA.

8. The dismissals typically fall into one of three (or sometimes more) of the following categories: (1) refusal to pay filing fee; (2) refusal to pay consumer clause registration fee; or (3) non-compliance in previously filed consumer matters.

9.      As to a respondent's failure to pay filing fees- Pursuant to the consumer rules of the AAA, the tribunal charges consumers a maximum of $200 to initiate arbitration.[1] Upon the filing of the initiating demand, in most cases, the AAA assesses a $300 case filing fee, a $1,400 case management fee, and a $1,500 arbitrator compensation fee. [2] In the event a respondent fails to pay such fees, the AAA will afford the respondent an opportunity to cure the payment deficiency before ultimately dismissing the case.

10.     As to refusal of business to comply with consumer clause registry- Pursuant to the AAA Consumer Rules, any entity that utilizes the auspices of the AAA to conduct arbitration proceedings must first submit its arbitration clause for review by the AAA to ensure it complies with the tribunal's requirements. The AAA charges $500 for said review. [3]

11.     Often times, businesses will fail to pay both the initial filing fees along with the consumer arbitration clause review fee.

12.     As it relates to non-compliance in previously filed consumer matters- Oftentimes whenever a business fails to pay the aforementioned fees, the AAA will decline to administer future arbitration proceedings.

---

[1] *See*: https://www.adr.org/sites/default/files/Consumer_Fee_Schedule_2.pdf
[2] *Id.*
[3] *Id.*

13.     As detailed herein, the likelihood of a business failing to comply with the AAA rules is not a farfetched proposition.

14.     It is in the interest of justice that this Court retain jurisdiction in the instant matter to allow Ms. Eccleston to seek this Honorable Court's intervention to compel the Defendant to comply with the AAA's requirements or failing that, to determine that a waiver occurred with respect to the same.

15.     Furthermore, the undersigned avers that the Defendant's first substantive contact[4] with the Plaintiff relative to its "Motion to Stay and/or Dismiss and Compel Mediation and Arbitration and Motion for Protective Order or to Stay Discovery" was Friday October 13, 2023 at or about 1:59 am by way of an email correspondence simply advising that the Defendant intended to compel arbitration.

16.     In response, the undersigned requested that the Defendant provide a copy of the anticipated motion to fully evaluate the substantive basis supporting the motion.

17.     On October 13, 2023 at or about 9:04 am, Defendant provided a copy of the contracts upon which it based its motion. A copy of the actual motion was not provided.

---

[4] The only prior communication regarding Defendant's desire to compel arbitration came in the context of settlement discussions and an attendant request for extension of time to respond to the complaint.

18.     Thereafter, on October 13, 2023 at or about 3:45 pm. Defendant filed the Motion.

19.     Due to the press of the workday, the undersigned did not have sufficient time to review the contracts that were provided or meaningfully confer with the Defendant. Had the Defendant provided the Plaintiff with sufficient information and time to complete an evaluation of the requested relief, Plaintiff would have consented to the Motion on the condition that the action be stayed and that the Court retain jurisdiction to confirm any resulting arbitration award.

**I DECALRE** under penalty of perjury, under the laws of the State of Florida, that the forgoing statements are true and accurate to the best of my knowledge.

**DATED** this October 27, 2023.

/s/ J. Feygin, Esq.

_____
JOSHUA FEYGIN