# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION

Case No.:  01-23-0004-9422

In the Matter of the Arbitration between:

PATRICIA A. ECCLESTON,

       Claimant,

vs.

INDICAR OF DAYTONA, INC.

       Respondent.

_____/

## ARBITRATOR'S RULING ON PARTIES' CROSS MOTIONS FOR DISPOSITION

Each party moves for disposition on the liability and damages at issue in this matter. Oppositions from each side have been filed as well as a Reply brief by Claimant.

Having reviewed the briefs filed by the parties in this matter, supporting documents and case law, the Arbitrator rules as follows:

Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary

judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir.1996) (*citing* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

For purposes of this proceeding, neither side has directed the Arbitrator to any disputed areas of material fact that would require resolution via an evidentiary hearing. The parties are in agreement about the Claimant's desire to purchase a previously leased car, what documents the Claimant signed at the time of the lease and the documents she signed at the later purchase of the vehicle. What remains in dispute is the effect of these documents on the Claimant's assertion that the transaction violated her rights under the Consumer Leasing Act.

Discussion

In January 2020, Patricia Eccleston leased a Kia Soul from Daytona Kia. She signed two documents as part of the leasing process, a Retail Lease Order (dated January 20, 2020) as well as a Florida Motor Vehicle Lease Agreement, prepared by Kia Finance, also dated January 20, 2020. The Lease Agreement provided an option to purchase the leased vehicle at the end of the lease in Section 9, indicating that the purchase cost of the vehicle would consist of the Residual Value (detailed in Section 7 as part of the basis for determining the monthly lease payment) plus

a Purchase Option Fee as well as any official fees, such as those for taxes, tags, license and registration. The Residual Value was calculated in Section 7 as $11,132.00. The Purchase Option Fee was described as "N/A". No other fees were included in the Lease Agreement under Section 9 outlining the purchase option at the end of the lease term.

When, as the Lease Term was coming to an end, Ms. Eccleston decided to buy the Kia in 2023, she returned to the dealership and completed a Buyer's Order dated 4/1/2023. In that document, the purchase price for the vehicle was listed at $11,225.89, not the $11,132.00 identified in the Lease Agreement. Two additional fees were included in the Buyer's Order, both missing from the Lease Agreement disclosures as to what would constitute the purchase price of the car at the end of the Lease. These fees were for a Pre-Delivery Service Charge of $998.00 and an Electronic Registration Filing Fee of 399.00. Ms. Eccleston's actual cost for the purchase of the vehicle was increased by $1490.89 as a result of these additions.

Consumer Leases, such as the one at issue in this matter, are governed by the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667 et seq. and the regulations established to implement the CLA, found at 12 C.F. R. § 1013 et seq. ("Regulation M"). CLA is an amendment to the Truth in Lending Act. There is no factual dispute between the parties that the CLA and Regulation M apply to the Lease that Ms. Eccleston signed in January 2020 which in due course resulted in her exercise of the purchase option on the vehicle in April 2023. As Claimant points out, the CLA is intended to provide a consumer with "sufficient information so that the lessee will be able to determine the actual price when the option becomes available" as set forth in the Official Interpretation of Regulation M. Of significance is the timing of the information provided to the lessee – the disclosures about the ultimate purchase price must be provided before the lessee enters into the Lease Agreement and consummates it. Accuracy and completeness of disclosures

is necessary to permit the consumer/lessee to rely on the provided information not only at the subsequent purchase point but at the time of selecting a particular lease.

Claimant's position is that a comparison of the April 2023 Buyer's Order and the January 2020 Lease Agreement demonstrates that the CLA was violated in this instance because the Buyer's Order included a higher purchase price than disclosed in the Lease, plus two additional service fees for Electronic Filing Service ("EFS") and a Pre-delivery Fee to which Claimant objected. Ms. Eccleston avers in her attached affidavit that she questioned the additional charges but was told they were required to purchase the vehicle. See Eccleston Affidavit at ¶ 19.

Respondent raises a number of defenses to liability under the CLA in this matter.

As to the EFS and Predelivery fees, Respondent asserts that Section 17 of the Lease Agreement permits these additional fees to be added to the Buyer's Order, a subsequent written agreement between the parties, and that Section 19 of the Lease Agreement permits fees for additional services. The Arbitrator disagrees that Section 19 permits the addition of EFS or Predelivery Fees, as these services are not within the scope of the "convenience or other fee . . . .apply[ing] to any expedited payment service . . . money transfer agent or other party we have contracted with to process the payment" indicated by the language of this Section. Section 19 also allows a "fee in an amount agreed to by phone or in writing at the time you request the service." Ms. Eccleston's Affidavit indicates she did not request these services and questioned them at the time of the purchase when the services were included on the Buyer's Order. No rebuttal evidence from Respondent contradicts Claimant's assertion.

The Pre-delivery fee is also problematic for Respondent who counters that the fee is permitted under Florida Administrative Code 69V-50.001, and required where it is included in

the dealership's advertised materials as a mandatory fee, as is the case here, to avoid claims of discrimination for not uniformly applying it to every sale. The Respondent does not explain why this required fee, which it contends must apply to each of its sales during this time period, is not simply included in the Lease Agreement, to insure consistency and disclosure compliance.

A safe harbor does exist to excuse civil liability under the CLA and TILA. 15 USC § 1640(c) excuses unintentional violations and bona fide errors as follows:

> A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programing, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

Respondent states that there is a process at the dealership to establish the pay-off amount after making sure that the lease is not in default or that the purchase does not constitute an early termination. A buyout report or email containing this information is generated. A Finance Manager or Sales Manager will confirm that the information in the buyout report is accurate by confirming the VIN of the requested vehicle for purchase against the information. Affidavit of Richard Nisbett at ¶¶ 22-28. However, the Nisbett Affidavit does not describe whether this process occurred in conjunction with the April 2023 purchase by Claimant. Moreover, none of the reports or emails referred to in the Nisbett Affidavit as part of the reasonable process to safeguard against clerical errors or simple calculation errors were attached for the Claimant's purchase. Accordingly, the Arbitrator finds that the Respondent fails to meet the preponderance of the evidence standard requisite for the bona fide error defense to preclude civil liability in this instance.

Respondent asserts that both the January 2020 Retail Lease Order and the April 2023 Buyer's Order contain requirements that Claimant has failed to meet and which are fatal to Claimant's ability to maintain her cause of action in this matter. The Retail Lease Order and Buyer's Order, while two distinct documents executed more than three years apart, contain identical language requiring:

> (a) A notice of claim via a written demand letter 30 days in advance of bringing any action for an unfair or deceptive trade practice pursuant to Florida Statute § 501.98; and
>
> (b) A requirement for mandatory mediation with a court certified mediator before any party institutes an action.

As to the presence of these requirements in the Retail Lease Order, the Arbitrator finds that the merger clause in the Lease Agreement negates the requirements for notice of claim and for mandatory mediation that arise in the Retail Lease Order, which precedes the Lease Agreement or is contemporaneous with it. See <u>HHH Motors, LLP v. Holt</u>, 152 So.3d 735, 748 (Fla. 1st Dist. Ct. App. 2014).

The timing of the Retail Lease Order and the Lease Agreement demonstrates that these documents were executed on the same day in conjunction with the leasing arrangement. Both of these documents were executed on January 20, 2020. The Lease Agreement contains a merger clause:

> O. ENTIRE AGREEMENT. Important. Read before signing. The terms of this Lease should be read carefully because only those terms in writing are enforceable. Terms and promises, including oral promises, are not enforceable unless they are expressly contained in this Lease. . .

Reaching this conclusion does not conclude the analysis as the January 2020 Lease Agreement's merger clause does not address the April 2023 Buyer's Order language.

The Notice of Claim issue is tied to the Florida Deceptive and Unfair Trade Practices Act (Florida Statute § 501.98). The CLA is a federal statute containing language requiring preemption where state law conflicts with the requirements of the CLA:

> A state law that is inconsistent with the requirements of the Act and this part is preempted to the extent of the inconsistency. If a lessor cannot comply with a state law without violating a provision of this part, the state law is inconsistent within the meaning of section 186(a) of the Act and is preempted, unless the state law gives greater protection and benefit to the consumer. 12 C.F.R. § 1013.9

No showing has been made that the Notice of Claim provision provides the lessee with a greater benefit than the disclosure requirements imposed in the CLA and as a result, the Arbitrator finds that the Notice of Claim language in the April 2023 Buyer's Order is pre-empted by the CLA.

The mandatory mediation provision in the Buyer's Order was abandoned when this action was moved into Arbitration without preserving the mediation requirement. It is clear that the Respondent raised the requirement to mediate as part of its Motion to Compel Arbitration. See Ex. C to Nisbett Affidavit. However, the issue of mediation was not raised during the initial case management conference in this case held on February 1, 2024. Nor did the Respondent file any Motion for Leave to request that the Case Management Order be amended to provide for mediation to occur prior to the other activities established in that Order. Respondent had an obligation to assert the mediation requirement notwithstanding the Claimant's initial refusal to participate in mediation, including raising the concept at the initial case management conference, and accordingly, this requirement is deemed abandoned.

Snelling & Snelling, Inc. v. Reynolds, 140 F.Supp.2d 1314, (M.D. Fla. 2001) provides instruction.  In Snelling, various agreements between the parties were at issue, including a mandatory arbitration clause.  Assessing the arbitration clause, the Court identified a three part test for evaluating whether the contractual right has been waived: (1) knowledge of the existing contractual right by the party asserting the right;  (2) acts inconsistent with enforcing that right by the party advocating for the right; and (3) prejudice to the party opposing the right as a result of the inconsistent acts.  Snelling at 1322.  While the Snelling case addressed a mandatory arbitration clause, the mandatory mediation clause asserted from the April 2023 Buyer's Order is analogous and subject to the same test in the opinion of the Arbitrator.

Here, Respondent drafted the Buyer's Order containing the mandatory mediation requirement, establishing knowledge of the right, but failed to assert that right once the case was dismissed from the civil trial docket and sent to arbitration at AAA.  Raising the mandatory mediation as a bar to a finding of liability at this late stage of the proceedings would clearly result in prejudice to the Claimant.  As a result, the mandatory mediation requirement does not apply.

Both the Retail Lease Order and the Buyer's Order contain the following language, which Respondent asserts establishes Claimant's waiver of her rights under the CLA:

> F. Miscellaneous:  This Order shall survive the execution of the Lease Agreement.   To the extent that any terms herein conflict with the terms of the Lease Agreement (except as to the dollar amounts), this Order shall control and govern.
>
> This Order shall cancel and supersedes any prior contract and comprises the complete and exclusive statement of the terms of the Order relating to the subject matter covered hereby, and constitutes the entire order between the parties.
>
> There are no representations or contracts between the parties, except as set forth herein or contemporaneously executed.  This Order may not be changed, modified or extended, except by an instrument in writing and signed by the parties.

Addressing the waiver issue, Respondent asserts that the language of Paragraph F set out above establishes Claimant's waiver of any of her CLA claims regarding the Lease Agreement. The Arbitrator agrees with the Claimant that the public policy underlying TILA and the CLA does not permit waiver via these contracting provisions. To find otherwise would obviate the remedial purposes entailed in the statute and would permit a lessor to escape responsibility for failing to disclose accurately at the time of the lease by including such language in a subsequent purchase order, effectively nullifying the impact of the CLA for required disclosures at the time of the Lease.

Having addressed all the defenses raised by Respondent, the Arbitrator finds it unnecessary to address the issues of ambiguity, extrinsic evidence, parole and incorporation by reference raised in the motion papers, and accordingly, takes no position on those matters.

WHEREFORE,

1. Claimant's Motion for Summary Disposition is GRANTED;
2. Respondent's Dispositive Motion is DENIED;
3. Damages are awarded to Claimant in the total amount of $3048.45. The total amount consists of $1557.56, representing 25% of the total amounts paid by Claimant pursuant to the lease, as well as $1490.89, representing the undisclosed amounts paid by Claimant in April 2023 when purchasing the previously leased vehicle. In addition, Claimant is entitled to reasonable attorney's fees and costs, which will be determined by the Arbitrator as part of the Final Award. The Final Award in this matter will be entered at a subsequent date, as set forth below. Until the Final Award is issued, no payment obligations are imposed.

4. Other than attorneys' fees and costs, no additional issues remain for the Evidentiary Hearing on June 3, 2024 and accordingly, that Hearing is cancelled.  Claimant, having prevailed on the liability issue in this matter, is directed to file its attorneys' fees and costs position statement no later than June 3, 2024.  Respondent is directed to provide its response to the Claimant's attorneys' fees and costs position on or before June 17, 2024.  Both sides are directed to the Amended Scheduling Order previously entered in this matter regarding the attorneys' fee and costs submissions and oppositions.  Alternatively, the parties may decide to present a stipulated agreement as to the attorneys' fees and costs in this matter, which will be entered by the Arbitrator, but if this approach is not taken, see below.

5. An Award shall be entered on Attorneys' Fees and costs in this matter within 14 days of the last submission detailed above.

    DATED:  May 21, 2024

_____
Christina Magee, Arbitrator